UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES PALMER,

    Plaintiff,

v.                                                            CASE NO. 8:14-cv-385-T-23TBM

CORIZON MEDICAL COMPANY,
*et al.*,

    Defendants.
    _____/

**O R D E R**

    Palmer's civil rights complaint alleges that the defendants violated his civil rights by denying him adequate medical care while he was confined in the Polk County jail. Upon his arrival at the Polk County jail from a Florida Department of Corrections' institution, Palmer advised the medical personnel that he required a specific medication for his chronic ear infection. Palmer alleges (1) that the defendants refused to prescribe the specific medication and instead administered ineffective medication and (2) that the lack of effective medication caused him to endure the pain of his chronic ear infection for several months before he was examined by a medical specialist. The defendants move to dismiss under Rule 12, Federal Rules of Civil Procedure, and argue (1) that Palmer failed to exhaust his administrative remedies before commencing this action and (2) that Palmer's complaint fails to state a claim of deliberate indifference to a serious medical need.

## Exhaustion

A prisoner must exhaust the available administrative remedies before filing a Section 1983 action. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must "properly exhaust" the administrative remedies. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The failure to "properly exhaust" the administrative remedies will bar a prisoner from pursuing a claim in federal court. "[S]aying that a party may not sue in federal court *until* the party first *pursues* all available avenues of administrative review necessarily means that, if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court." *Ngo*, 548 U.S. at 100 (italics original). *See Leal v. Georgia Dep't of Corr.*, 254 F.2d 1276, 1279 (11th Cir. 2001) ("This means that 'until such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citation omitted); *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005) ("[W]e hold that the PLRA's exhaustion requirement does contain a procedural default component: Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim.

- 2 -

Therefore, [the] grievance, which [was] filed out-of-time and without good cause, is not sufficient to exhaust [the] administrative remedies for purposes of the PLRA exhaustion requirement."), *cert. denied*, 548 U.S. 925 (2006).

In the motion to dismiss, the defendants argue that Palmer failed to fully exhaust his administrative remedies before beginning this action. The defendants have the burden of proving that Palmer did not fully exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that lack of exhaustion is an affirmative defense); *Dixon v. United States*, 548 U.S. 1, 8 (2006) (recognizing that the burdens of both production and persuasion are on the same party). Although exhibits show that Palmer filed at least one grievance about the denial of medical care, the defendants contend that Palmer failed to pursue the appeal process for the grievance. Apparently, the Polk County jail has separate appeal processes for medical issues and detention issues. Attached to the motion to dismiss is a copy of the appeal process for the medical provider at the Polk County jail. Palmer responds (Doc. 26 at 3) that neither he nor his fellow detainees knew an appeal process existed for medical issues. Further, Palmer provides a copy of the Polk County Sheriff's Office Inmate Handbook, which, as he correctly represents, reveals an appeal process for neither medical nor detention issues. (Doc. 26, Exhibit A) The defendants do not disclose how an inmate would know about the existence of an appeal within the medical provider's system. Palmer's situation is remarkably similar to the pretrial

detainee in *Goebert v. Lee County*, 510 F. 3d 1312, 1322-23 (11th Cir. 2007), which likewise involved the lack of disclosure of an appeal process regarding medical care.

> Goebert did not know that she should, or could, appeal Captain Weaver's denial of her complaint. There is some uncertainty about whether she ever received the Inmate Handbook, but even assuming that she did, there is nothing in it about any procedure for appealing the denial of a complaint or any request. The parties agree on that. The parties also agree that the appeal procedure is laid out in the jail's General Operating Procedures, but that no inmate was ever permitted to see those procedures, at least not until Goebert filed this lawsuit and her attorney ferreted out a copy of them through discovery. What the parties disagree about is how the PLRA's availability requirement applies in this circumstance.
>
> . . . .
>
> It is difficult to define "such remedies as are available" to an inmate in a way that includes remedies or requirements for remedies that an inmate does not know about, and cannot discover through reasonable effort by the time they are needed. Nevertheless, some of the defendants try. They argue that any remedy that is in place is "available" to the inmate even if the inmate does not know, and cannot find out, about it. That argument could have been inspired by the Queen of Hearts' Croquet game, since there is nothing on this side of the rabbit hole to support it. Having kept Goebert in the dark about the path she was required to follow, the defendants should not benefit from her inability to find her way.
>
> . . . .
>
> The reason there is no precedent to support the defendants' argument is that it makes no sense. That which is unknown and unknowable is unavailable; it is not "capable of use for the accomplishment of a purpose." *Booth [v. Churner*], 532 U.S. [731] 738 [(2001)]. If we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all along. The Queen would be proud.

The defendants fail to meet their burden of proving that Palmer failed to exhaust a remedy, specifically an appeal, that was "available." As a consequence, the motion to dismiss based on Palmer's alleged failure to exhaust the "available" administrative remedies lacks merit.

### Motion to dismiss

The defendants move (Doc. 20) to dismiss the complaint, which they argue fails to state a claim. A *pro se* complaint receives a generous interpretation. *See, e.g., Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), and *Kirby v. Siegleman*, 195 F.3d 1285, 1289 (11th Cir. 1999). On a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003), *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The factual allegations and all reasonable inferences (1) are accepted as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and (2) must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead of contesting Palmer's factual allegations, the defendants argue that the asserted facts fail to state a claim upon which relief can be granted.

**Defendant Corizon Medical Company**

Palmer names Corizon Medical Company ("Corizon") as a defendant but he fails to a allege fact showing Corizon's personal involvement in the denial of his medical care. The complaint must allege facts showing the involvement of each defendant in the alleged deprivation of Palmer's civil rights. The only alleged involvement by Corizon is as the employer of both Dr. Gomez and Nurse Wyatt. A claim against an employer based on an act by an employee asserts a claim under the principle of *respondeat superior*. Although permitted in a civil tort action, the principle of *respondent superior* is inapplicable for a Section 1983 claim. *Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 691, 694 (1978); *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*). Consequently, the complaint alleges no claim against Corizon Medical Company.

**Defendant Dr. Gomez and Nurse Wyatt, P.A.**

According to the factual allegations in the complaint (Doc. 1 at 8 - 11), in October, 2013, Palmer was transferred from the Florida Department of Corrections to the Polk County jail for a post-conviction proceeding. Because of his history of chronic ear infections Palmer submitted a "sick call request" upon his arrival at the county jail. The next day Palmer was examined by Physician's Assistant Nurse Wyatt ("P.A. Wyatt"). Palmer explained his relevant medical history and the specific treatment that prison medical personnel had found was effective, specifically

"Ocedic Acid" ear drops three to four times each day and mastoid cleaning performed by an "ENT doctor" every three months. P.A. Wyatt "prescribed some antibotics, steroid and pain reliever" that Palmer advised "was not going to work because the doctors at Madison C.I. have already tried this and it did not work." Palmer suggested that P.A. Wyatt contact the medical department at the prison to verify the specific treatment that was effective. Palmer alleges that P.A. Wyatt ignored the suggestion and scheduled Palmer "for a follow-up to see if the infections [had] cleared up" by using the medications that P.A. Wyatt prescribed. Because the initial prescription proved ineffective, at the second visit P.A. Wyatt changed the prescription to "sinus medication and mucus relief, contrary to Plaintiff's warnings that the doctors at Madison C.I. already tried these similar treatments, but it would not work. After two more follow-ups Mr. Wyatt finally had Plaintiff sign waivers so that Mr. Wyatt could obtain Plaintiff's medical records from Madison C.I., and referred Plaintiff, after a month and a half, to see an ENT." Palmer further alleges that "[a]fter two months of submitting inmate sick-call request forms Plaintiff was finally referred again to see Mr. Wyatt[, who] was astonished after Plaintiff informed him that he had not yet seen the ENT. Mr. Wyatt immediately called [Dr.] Gomez to inquire why Plaintiff had not seen the ENT after having ear infections for over two months, and [Dr.] Gomez says that she was 'holding Plaintiff's referral to the ENT until she receive[d] and reviewed Plaintiff's medical records from Madison C.I.'" Several subsequent inquiries by both Palmer and his family members received the

same answer that Dr. Gomez was awaiting the medical records before authorizing a visit by a specialist.

Palmer commenced this action in February, 2014, and after three months he moved (Doc. 8) for a temporary restraining order to require an examination by a specialist. Palmer withdrew (Doc. 15) his motion after a specialist examined him less than a week after his motion for expedited relief.

A state has the constitutional obligation to provide adequate medical care to those in confinement. *Adams v. Poag*, 61 F.3d 1537 (11th Cir. 1995); *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989). The standard for a prisoner claim of medical mistreatment is well-established. A prisoner must allege and show that an official acted with deliberate indifference to a serious medical need. A difference of opinion over medical judgment, in either diagnosis or treatment, supports no constitutional claim. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980), *cert. denied*, 450 U.S. 1041 (1981); *Tedesco v. Johnson*, 119 F. Supp.2d 1320, 1327 (M.D. Fla. 2000).

Depending on the circumstances, including the length of the delay, deferred treatment can constitute deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). Therefore, Palmer must allege sufficient facts to establish that the defendants knew of a serious medical condition from which he was suffering and delayed treatment either intentionally or with reckless disregard. *See generally, Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment."). Further, "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d at 393-94. Consequently, the law evaluates medical treatment by considering whether the medical need is serious, whether the delay worsens the medical condition, and whether the delay was reasonable in the circumstance. *Hill v. DeKalb Regional Youth Detention Center,* 40 F.3d 1176, 1188-40 (11th Cir. 1994).

The Eleventh Circuit describes a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (*quoting Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotation marks and citation omitted). In either instance, the medical need must be "one that, if left unattended, poses a substantial risk of serious harm." *Farrow v. West*, 320 F.3d at 1243. *See Farmer v. Brennan*, 511 U.S. 825, 834, (1994).

*Farrow* lists examples of both "serious" and "non-serious" medical needs. *Compare Adams v. Poag,* 61 F.3d 1537, 1539-41, 1543 (11th Cir. 1995) (finding that asthma, with continual breathing problems and with intermittent wheezing, coughing, and hyperventilating, can constitute a serious medical need), *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (holding that "a deliberate delay on the

order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim."), *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989) (holding that evidence showing that the plaintiff's leg collapsed under him, was deteriorating and painful, and precluded him from walking, supported jury's conclusion that plaintiff had serious medical need), and *Aldridge v. Montgomery*, 753 F.2d 970, 972-73 (11th Cir. 1985) (finding that a long cut over the detainee's eye, which both required six stitches and had bled for two and a half hours while in detention, was a serious medical need), *with Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir. 1986) (holding that requiring an inmate – who has "pseudofolliculitis barbae" or "shaving bumps" – to shave, in contravention of a physician's order, "does not rise to the level of the cruel and unusual punishment forbidden by the Eighth Amendment") and *Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (rejecting an inmate's claim of a serious medical need based on his high blood pressure and pain from an old shoulder injury, which a doctor determined the inmate had a full range of motion). *See also Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004) (holding that a prisoner's HIV and hepatitis are serious medical needs).

Palmer alleges that he endured the pain of a chronic ear infection without effective medication and without an examination by a specialist for approximately seven months. Because P.A. Wyatt promptly and repeatedly treated Palmer's condition by prescribing several medications, Palmer fails to state a claim against P.A. Wyatt even though the complaint is afforded a generous interpretation and the

facts are viewed in the light most favorable to Palmer.  However, because a court is limited to the facts in the complaint when considering a motion under Rule 12(b)(6), the complaint states against Dr. Gomez a claim sufficient to survive a motion to dismiss.  As a consequence, whether a specialist should examine Palmer and whether the delay in any necessary examination by a specialist is reasonable are fact issues that depend upon evidence beyond the complaint and that must await resolution on summary judgment or at trial.

Accordingly, the motion to dismiss (Doc. 20) is **DENIED** to the extent that it seeks a dismissal based on a failure to exhaust administrative remedies.  The motion is **GRANTED** regarding  Physician's Assistant Nurse Wyatt, who is dismissed from this action.  The motion is **DENIED** regarding Dr. Gomez.  On or before **MONDAY, NOVEMBER 24, 2014**, Dr. Gomez must answer the complaint.  Each party has until **MONDAY, JANUARY 26, 2015**, to complete discovery and **FORTY-FIVE (45) DAYS** after the close of discovery to move for summary judgment.

ORDERED in Tampa, Florida, on October 30, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE