UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES PALMER

    Plaintiff,

v.   CASE NO. 8:14-cv-385-T-23TBM

CORIZON MEDICAL COMPANY,
*et al.*,

    Defendants.
_____/

## **ORDER**

Suing under 42 U.S.C. § 1983, James Palmer alleges that Margie Gomez, M.D., delayed approving a "consultation request" while Palmer was confined in the Polk County jail. Dr. Gomez moves (Doc. 53) for summary judgment, Palmer responds (Doc. 57), and Dr. Gomez replies (Doc. 58). For the reasons that follow, the motion is granted.

## **BACKGROUND**

On November 18, 2013, Ron Wyatt, a physician assistant, submitted a consultation request, which recommended that Palmer see an ear, nose, and throat specialist (ENT). (Doc. 38-3 at 4) Because Dr. Gomez is the medical director for the Polk County jail, she is the first person to review such a request. She explains:

> This request for referral to see an ENT was a request for specialized services to be provided by a medical provider outside the jail. This request required authorization through the established utilization

>  management procedures. The first step is for a primary provider, such as Mr. Wyatt, to submit the Consultation Request Form on which medical information is required to be provided to explain the medical need for specialized service. The second step is for the Site Medical Director to review the Consultation Request Form and determine whether it should be submitted for further review through utilization management procedures. The final approval comes from the Regional Medical Director. . . . If a consultation request form is submitted as an urgent request, it receives preference in processing for a final decision over requests noted to be routine.

(Doc. 53-1 "Gomez Aff." at ¶ 3)

Wyatt categorized the consultation request as "routine." Wyatt identified Palmer's presumed diagnosis as a ruptured eardrum, and he stated that an examination revealed a bulging right eardrum and multiple left eardrum ruptures. Wyatt described the onset of Palmer's condition as "years ago" with a history of failed surgeries. (Gomez Aff. at ¶ 14, Doc. 38-3 at 4)

Typically, Dr. Gomez immediately approves a consultation request, if the request is warranted. In some cases, however, Dr. Gomez requests additional information. Dr. Gomez explains that in Palmer's case:

> I wanted to receive records from previous providers concerning [Palmer's] ear condition before I submitted the request for further review. The request form indicated [Palmer's] condition to be a chronic condition. The request form did not indicate the condition required urgent attention. Instead, it noted the request to be a routine request. Since I thought it was highly likely the reviewing physicians would want additional information concerning [Palmer's] previous history for this reportedly chronic condition, and because the request form did not indicate any urgency, I did not submit the request until I had the additional information I anticipated the reviewers would request.

(Gomez Aff. at ¶ 4)

- 2 -

On November 22, 2013, Palmer authorized the release of his health information. On December 19, 2013, Palmer's medical records arrived. The next day, Dr. Gomez approved the consultation request. (Gomez Aff. at ¶ 5)

Palmer was scheduled for an ENT appointment on January 23, 2014.[1] Although Dr. Gomez was not involved in scheduling the appointment, she explains that the five-week delay between her approval and the appointment "was relatively soon in light of the holiday season." (Gomez Aff. at ¶¶ 5, 13) In the meantime, Palmer received treatment for his ear condition. (Gomez Aff. at ¶ 15)

The ENT prescribed medication and recommended a CT scan to rule out cholesteatoma, an abnormal growth of skin caused by repeated ear infections. (Gomez Aff. at ¶ 7, Doc. 38-2 at 77) On February 8, 2014, a CT scan confirmed a cholesteatoma in Palmer's left ear. (Gomez Aff. at ¶ 10) On June 9, 2014, a neurotologist removed the cholesteatoma. After receiving follow-up care, Palmer requested no further treatment. (Gomez Aff. at ¶ 12)

## DISCUSSION

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). To prove deliberate indifference, Palmer must establish (1) that Dr. Gomez subjectively knew of a serious risk of serious harm, and (2) that Dr. Gomez

---

[1] Palmer commenced this action on January 22, 2014, one day before the appointment. (Doc. 1 at 2) Dr. Gomez explains that "[f]or security reasons, inmates are not informed of the dates or times of scheduled appointments." (Gomez Aff. at ¶ 3)

disregarded the risk "by conduct that is more than mere negligence." *Melton*, 841 F.3d at 1223 & n.2.  A delay in providing medical care exceeds mere negligence when "it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified."  *Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (internal quotation marks omitted).  Pertinent considerations include the nature of the medical need, the reason for the delay, and the effect of the delay on the prisoner's medical condition.  *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994).  A prisoner must "place verifying medical evidence in the record to establish the detrimental effect of [the] delay."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled on other grounds, Hope v. Pelzer*, 536 U.S. 730 (2002).

Dr. Gomez denies subjective knowledge of a serious risk of serious harm.  Dr. Gomez emphasizes that Wyatt categorized the consultation request as "routine," that Wyatt described Palmer's ear condition as chronic, and that Wyatt reported no current ear infection or complaints of pain.  Dr. Gomez further states that she "was not verbally [meaning "orally"] informed that this request was not routine but was instead urgent."  (Gomez Aff. at ¶ 14)

Palmer responds that his medical records document his pain.  In particular, Palmer cites an October 8, 2013 referral for "ear pain" and a treatment note from that same day, which states that Palmer "winced" during his examination.

- 4 -

(Doc. 38-3 at 126, Doc. 38-4 at 53)  But Palmer cites no evidence that Dr. Gomez reviewed the medical records.  On the contrary, Dr. Gomez states that she was not asked to review Palmer's medical records, which were kept at another facility.  (Gomez Aff. at ¶ 14)

Dr. Gomez persuasively argues that — based on the facts within her knowledge — she "responded reasonably" to the consultation request.  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).  Dr. Gomez delayed approving the consultation request for a medical reason — she "thought it was highly likely" that the reviewing physicians would require additional information about Palmer's chronic condition.  (Gomez Aff. at ¶ 4)  Dr. Gomez promptly requested the medical records, and once the records arrived, Dr. Gomez promptly approved the consultation request.  (Gomez Aff. at ¶ 5)

Palmer insists that a factfinder could infer an unreasonable delay because his CT scan received faster approval.  Wyatt requested the CT scan on January 28, 2014, and the scan occurred on February 7, 2014.  (Gomez Aff. at ¶ 10)  But Palmer fails to acknowledge that Polk County jail already possessed Palmer's medical records when Wyatt requested the CT scan.  Because the two events are not comparable, the CT scan supports no inference that Dr. Gomez unreasonably delayed the consultation request.

Finally, Dr. Gomez argues that Palmer lacks evidence that the delay in approving the consultation request "exacerbated [Palmer's] medical condition."  *Hill*,

- 5 -

40 F.3d at 1190.  Palmer neglects to address this issue in his response.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

### CONCLUSION

A review of the record demonstrates that Dr. Gomez acted reasonably based on the facts within her knowledge.  Palmer establishes no conduct that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Dr. Gomez's motion (Doc. 53) for summary judgment is **GRANTED**.  The clerk must enter a judgment in favor of Dr. Gomez and must close the case.

ORDERED in Tampa, Florida, on February 24, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE